ELIZABETH STEFFY, Executrix, Appellee, v. CARL C. SCHULTZ, Appellant; MINNIE SCHULTZ, Appellee.

No. 41177.

FEBRUARY 14, 1933.

Tobin, Tobin & Tobin, for appellant.

T. A. Lane and Talbott & Talbott, for Elizabeth Steffy, appellee.

MITCHELL, J.—The appellee Elizabeth Steffy, as executrix and trustee of the estate of Samuel Steffy, deceased, filed on September 22, 1930, her petition in equity against the appellant Carl C. Schultz, and Minnie Schultz. We shall in this opinion refer to Elizabeth Steffy as the appellee.

The appellee alleged in her petition that Carl C. Schultz made, executed, and delivered to one Samuel Steffy his promissory note, in writing, dated March 1, 1920, and due March 1, 1926, bearing interest at the rate of 5½ per cent per annum, payable annually, and for the principal sum of $9,000; and that on the same date and to secure the payment of the $9,000 indebtedness, the appellant Carl C. Schultz made, executed, and delivered to Samuel Steffy his certain real estate mortgage covering the West Half of the Northeast Quarter of Section 34, in Township 80 North, Range 13 West of the Fifth P. M., excepting the right of way of the Chicago & Northwestern Railroad. The said Samuel Steffy, the original payee of said note and the grantee in the mortgage, is now deceased, and the appellee Elizabeth Steffy is the duly qualified and acting executrix of his estate.

The appellee alleges that on the 13th day of November, 1920, Carl C. Schultz conveyed the premises described in said mortgage to Minnie Schultz by warranty deed, under the terms of which the said Minnie Schultz assumed and agreed to pay the indebtedness of $9,000 to Samuel Steffy; and that on or about March 1, 1926, Elizabeth Steffy, as executrix of the estate of Samuel Steffy, deceased, agreed that the indebtedness represented by the note and mortgage hereinbefore referred to should be extended for the term of five years. She alleges that at no time did she agree to release the said Carl C. Schultz from his personal liability to pay the said indebtedness; that without her knowledge and without authority, there was prepared a new note and mortgage, which were executed by Minnie Schultz, and that without the knowledge or consent of the appellee, the original note executed by Carl C. Schultz was surrendered to him and a release of the said Carl C. Schultz mortgage was executed by the appellee, and that she did not know that the release of said mortgage would release Carl C. Schultz from all liability, and that had she known she would not have released said mortgage; that the original mortgage given by Carl C. Schultz to Samuel Steffy was duly filed for record in the office of the county recorder of Poweshiek County on March 3, 1920, and appears of record in Book 137 of Mortgages, on page 509. The appellee prays that the release of Carl C. Schultz, the appellant, on said indebtedness be cancelled and held for naught, and that the mortgage made and executed by Carl C. Schultz to Samuel Steffy, and dated February 26, 1920, and covering the land above described, be established as a first lien upon

the premises described therein from the date thereof, to wit, from February 26, 1920, and that the appellee have judgment against the appellant Carl C. Schultz, and Minnie Schultz, on the original indebtedness secured by the said mortgage, and for the costs of this action, and that the mortgage be foreclosed and the equity of redemption of the said Carl C. Schultz and Minnie Schultz, and each of them, be forever barred and foreclosed, and that special execution issue for the sale of the premises described and general execution for any balance of said judgment remaining unpaid. The appellee later amended her petition, crediting the payment of $500 upon the said mortgage, and asking for judgment in the amount of $8,500, plus interest and costs. The appellee also tendered the release of the said mortgage and the note signed by Minnie Schultz, and dated March 1, 1926. To the appellee's petition Carl C. Schultz and Minnie Schultz filed answer, in which they denied generally and specifically every allegation stated in the petition except such as were admitted in their answer. The appellant Carl C. Schultz admitted that he made, executed, and delivered the $9,000 note to Samuel Steffy, together with the mortgage to secure said note, as alleged in the appellee's petition. Appellant alleged that Minnie Schultz executed and delivered to Elizabeth Steffy a new note for the sum of $8,500, due in five years after date, with interest at 5½ per cent per annum, and made, executed, and delivered to the said Elizabeth Steffy a written mortgage lien against the land covered by the mortgage made by the said Carl C. Schultz to Samuel Steffy, to secure the said note of $8,500, and that the said Elizabeth Steffy accepted the said new note and mortgage in payment of the note and mortgage made and executed by Carl C. Schultz to the said Samuel Steffy and dated February 26, 1920. The appellant also alleged that by her actions Elizabeth Steffy was now estopped from claiming or having any right, title, or interest under the note and mortgage given by Carl C. Schultz to Samuel Steffy. The appellant further alleged that the said Elizabeth Steffy has been guilty of laches, and that she has lost, waived, and abandoned all claims or rights to proceed against the said Carl C. Schultz. On the 14th day of March, 1931, the appellant Carl C. Schultz filed in the office of the clerk of said court his cross-petition against Elizabeth Steffy individually, in which he alleged that by reason of the conduct and actions of the said Elizabeth Steffy the said Carl C. Schultz believed that on or about March 1, 1926, he was released and relieved from all

liability on account of the indebtedness covered by the note and mortgage given by Carl C. Schultz to Samuel Steffy; that the land covered by the mortgage was, up until the 1st day of March, 1926, when said note and mortgage were returned to him by the appellee, fairly worth a sum in excess of the indebtedness shown by the said note and mortgage, but that since the delivery of the said note and mortgage and release the land described in the mortgage has depreciated and decreased in value to an aggregate amount of much less than the amount prayed for in appellee's petition; and that through the actions and failure of the said Elizabeth Steffy to do the things she should have done, she is individually liable to the appellant, and asked that, in the event the court decreed foreclosure as prayed by the said Elizabeth Steffy, and entered judgment against the cross-petitioner, the cross-petitioner be awarded judgment against the said Elizabeth Steffy individually for any and all expenses, costs, and damages suffered by him in this cause by reason of any depreciation or decrease in the value of said real estate from and since March 1, 1926, and for any deficiency after the sale of said land at execution sale. Elizabeth Steffy appeared and filed answer to said cross-petition. She denied each and every allegation contained in the said cross-petition, and by way of defense, as a matter of law, to said cross-petition, she stated that the cross-petition shows upon its face that the said Carl C. Schultz is not entitled to the relief demanded, or to any relief against the said Elizabeth Steffy.

The main contention of the appellant here for reversal is that Mrs. Steffy, as executrix of the estate of Samuel Steffy, accepted the new note of Minnie Schultz in payment of the old note which was signed by Carl C. Schultz, and that as it was a matter of payment it was not necessary to secure an order of court authorizing her to release the mortgage. (Code, Section 11929.) In the latter part of 1925, or in January, 1926, Fred Schultz, who was a brother of Carl C. Schultz and Minnie Schultz, but had no interest whatever in any of the transactions herein set out, went to see Mrs. Steffy. There was no one else present at the time of the conversation, which took place at Mrs. Steffy's home. There is a dispute in the record in regard to that conversation. Fred Schultz testified that he asked Mrs. Steffy whether she knew that his brother Carl had sold the farm to his sister. He said Mrs. Steffy replied that she did. He then testified that he said to Mrs. Steffy, "The mortgage is due," and asked her whether his sister (Minnie) could have the money, and

Mrs. Steffy said she could. He then testified that Mrs. Steffy said she would go down to the bank in a day or two and have Mr. Chittenden see to making out some new papers. Mrs. Steffy testified that she knew that the farm had been sold by Carl to Minnie, and that at the time that Fred Schultz talked with her she said she would renew the loan; that she did not say that she would go down to see Mr. Chittenden and have the new papers made out, and she testified that she never did tell Mr. Chittenden to make out the new papers. Mr. Chittenden, the banker, however, testified that Mrs. Steffy did tell him to make out the new papers. At the time that Mrs. Steffy and Fred Schultz had the conversation in regard to the loan in 1925 or 1926, the record shows that the farm upon which the mortgage had been given to secure the loan was worth greatly in excess of the amount of the loan, and that it was ample security for a loan of $8,500. Mrs. Steffy's testimony in the record stands alone in regard to her contention as to whether it was to be a renewal of the old loan or a new loan. There are a great many facts which go to prove the contention of the appellant in this case that instead of a renewal it was, in fact, a new loan. Mrs. Steffy is a lady along in years. The record clearly shows that her memory was not good in regard to what took place at the time of the conversation between Mrs. Steffy and Fred Schultz. She says that she did not say that she would have Mr. Chittenden, the banker who looked after her business, make out the new papers. She testified that she never told Mr. Chittenden to make out the new papers. Mr. Chittenden, the banker, however, testified that she did tell him, and that, in compliance with Mrs. Steffy's request, he had the new papers made out. Mr. Chittenden was Mrs. Steffy's adviser. He was a banker, a man of a great deal of business experience. He made out the new papers within a short time after Mrs. Steffy and Fred Schultz had had the conversation. In making out the new papers Mr. Chittenden accepted a note signed only by Minnie Schultz. He knew that Carl C. Schultz was not signing the new note, and he did not ask Carl C. Schultz to sign the new note. The old note was returned to Carl C. Schultz. He knew that Carl C. Schultz was being released from the old indebtedness by the accepting of a new note from Minnie Schultz. A few days after March 1, 1926, shortly after the new note and mortgage were made out, Mrs. Steffy went to the bank, and she herself signed a release of the old mortgage, which release was prepared by Mr. Chittenden, releasing Carl C. Schultz from the mortgage.

The record shows that Mrs. Steffy was a woman of some education, and could read and write. This release was delivered to Carl C. Schultz, and within a few days thereafter was duly recorded by him in the office of the county recorder. There is no claim in this record but that Mr. Chittenden acted in good faith. He was Mrs. Steffy's agent. He was the man she relied upon. He was the man that she instructed to make out the new papers. The new note was in the amount of $8,500, while the old note was in the amount of $9,000, the old note having been reduced from $9,000 to $8,500 by payments which were made by Minnie Schultz to Mrs. Steffy. The record also shows that the new note and the new mortgage were placed in Mrs. Steffy's safety deposit box in the bank. In 1929 Mrs. Steffy desired to borrow some money from the Farmers Savings Bank. In order to borrow this money she put up as collateral security the new note signed only by Minnie Schultz. The new note at that time was in her possession. She even indorsed it, and, while she claims that she did not know that it was signed only by Minnie Schultz, the note being in her possession and she having indorsed it, it seems that she must have known that it was signed only by Minnie Schultz. This was better than a year before this action was commenced. Mrs. Steffy had a life interest in the estate, with no restrictions as to the handling of the property or the use of the funds. In the fall of 1929, Fred Schultz testified he went again to Mrs. Steffy. At that time he told Mrs. Steffy that his sister Minnie could not make the payments and asked her (Mrs. Steffy) if she would be willing to take the land back. He testified that she said that she would not, and in the same conversation she said that where she made the mistake was that she should not have released him (Carl C. Schultz) from the mortgage. This conversation, testified to by Fred Schultz, was not denied by Mrs. Steffy. The record shows that in 1930, when this action was commenced, there had been a material drop in real estate and that the Schultz farm had greatly decreased in value. Mrs. Steffy waited four and a half years after she had signed the release releasing Carl C. Schultz, four and a half years after she had accepted the new note from Minnie Schultz, during all of which time Minnie Schultz had made payments of interest directly to Mrs. Steffy on the new note. Mrs. Steffy waited until the values of real estate had greatly decreased, and then for the first time she informed Carl C. Schultz and the other parties interested that she did not know that Carl C. Schultz had not signed the new

note and that she had not agreed to release Carl C. Schultz. It seems to us that Mrs. Steffy—having had the conversation with Fred Schultz in 1926; having directed her adviser, a banker, Mr. Chittenden, to make out the new papers; having signed a release of the old mortgage; having returned the old note to Carl C. Schultz; having had the new note in her possession for a matter of better than four and a half years; having had a new note made out in a sum not the same as the old note; having accepted the new note at a time when the security was ample; having stood by for a period of four and a half years and objecting only when the values of real estate had decreased and the security for the new note was questionable—cannot say now that she did not accept the new note of Minnie Schultz in 1926 in payment of the note signed by Carl C. Schultz.

The release of the mortgage she executed was executed by her in her official capacity. It was not necessary to secure an order of court for her to release the mortgage, as the new note was given in payment of the old note. The appellee was not entitled to the relief which she seeks in this action, and the lower court was wrong in its finding and in its decree, and the judgment of the lower court must be and it is hereby—Reversed.

All Justices concur.